# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA G. MUNOS CONTRERAS,<br><br>                              Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                              Defendant. | Case No.: 15cv2196-AJB-MDD<br><br>**REPORT AND<br>RECOMMENDATION ON<br>CROSS MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>[ECF NOS. 14, 16] |

Plaintiff Maria Munos Contreras ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits under Title II for supplemental security income payments under Title XVI of

1

the Social Security Act.  Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits, or, in the alternative, to remand the case for further administrative proceedings.  (ECF No. 14).  Defendant has moved for summary judgment affirming the denial of benefits.  (ECF No. 16).

For the reasons expressed herein, the Court recommends that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

I. <u>BACKGROUND</u>

Plaintiff alleges that she became disabled on February 10, 2011, due to osteoarthritis, disorder of the spine, disorder of the right knee, and diabetes.  (A.R. 24).[1]  Plaintiff's date of birth of May 10, 1957, categorizes her as an individual closely approaching advanced age as of the date of alleged disability onset.  (A.R. 31); 20 C.F.R. §§ 404.1563 and 416.963.

A.  <u>Procedural History</u>

On October 4, 2011, Plaintiff filed an application for social security disability insurance benefits.  (A.R. 22).  This claim was initially denied on February 15, 2012, and denied upon reconsideration on October 18, 2012.  (*Id.*).  On March 4, 2014, Plaintiff appeared and testified in San Diego, California before Administrative Law Judge ("ALJ") Nancy M. Stewart.  Plaintiff was represented by attorney Steven Rosales.  (*Id.*).  Plaintiff and impartial Vocational Expert ("VE") Harlona S. Stock also appeared and testified at the hearing.  (*Id.*).

---

[1] "A.R." refers to the Administrative Record filed on January 19, 2016, and is located at ECF No. 11.

15cv2196-AJB-MDD

On April 2, 2014, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 22).  Plaintiff appealed and the Appeals Council declined to review the ALJ's decision.  (A.R.1-6).  Consequently, the ALJ's decision became the final decision of the Commissioner.  (*Id.*).

On October 1, 2015, Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's decision.  (ECF No. 1).  On January 19, 2016, Defendant answered and lodged the administrative record with the Court.  (ECF Nos. 10, 11).  On April 14, 2016, Plaintiff moved for summary judgment.  (ECF No. 14).  On May 4, 2016, the Commissioner cross-moved for summary judgment.  (ECF No. 16).  On May 4, 2016, the Commissioner responded in opposition to Plaintiff's motion.  (*Id.*).

## II. DISCUSSION

A.    Legal Standard

The supplemental security income program provides benefits to disabled persons without substantial resources and with little income.  42 U.S.C. § 1383.  To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1383(a)(3)(A).  The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 1383(a)(3)(B).

3

The Commissioner makes this assessment through a process of up to five-steps.  First, the claimant must not be engaged in substantial, gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work.  20 C.F.R. § 416.920(d).  If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded.  20 C.F.R. § 416.920(d).  If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity.  At the fourth step, the claimant's relevant work history is considered along with the claimant's residual functional capacity.  If the claimant can perform the claimant's past relevant work, benefits are denied.  20 C.F.R. § 416.920(e).  At the fifth step, reached if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity.  If the claimant cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 1383(c)(3),

15cv2196-AJB-MDD

405(g).  The scope of judicial review is limited and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (Pregerson, J. concurring).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts

5

15cv2196-AJB-MDD

1  relevant to his decision," even if the claimant is represented by counsel.

2  *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

3      Even if a reviewing court finds that substantial evidence supports

4  the ALJ's conclusions, the court must set aside the decision if the ALJ

5  failed to apply the proper legal standards in weighing the evidence and

6  reaching his or her decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th

7  Cir. 1978).  Section 405(g) permits a court to enter a judgment

8  affirming, modifying or reversing the Commissioner's decision.  42 U.S.

9  C. § 405(g).  The reviewing court may also remand the matter to the

10  Social Security Administration for further proceedings.  *Id.*

11  B.    The ALJ's Decision

12      The ALJ concluded Plaintiff was not disabled, as defined in the

13  Social Security Act, from February 10, 2011, through the date of the

14  ALJ's decision of April 2, 2014.  (A.R. 21).

15      The ALJ found Plaintiff's osteoarthritis, disorder of the spine,

16  disorder of the right knee and diabetes to be severe impairments.  (A.R.

17  24).  Plaintiff's alleged mental limitations were found not severe.  The

18  ALJ determined Plaintiff did not have an impairment or combination of

19  impairments that meets or was medically equivalent to the severity of

20  one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

21  Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).  (A.R. at

22  25).  The ALJ noted that the "evidence does not support that [Plaintiff]

23  has the severity of symptoms required either singly or in combination to

24  meet or equal the conditions found under the medical [l]istings."  (A.R.

25  25).

15cv2196-AJB-MDD

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform medium work . . . except [Plaintiff] can lift and carry 25 pounds frequently, 50 pounds occasionally; she can push and pull within these weight limits on an occasional basis with the lower and upper extremities; standing and walking 6 hours out of 8 with no prolonged walking greater than two hours; standing and walking 6 hours out of 8 with no prolonged walking greater than 2 hours; sitting 6 hours out of 8 with the ability to stand and stretch not to exceed 10% of the day; no ladders, ropes or scaffolds; and no work around hazards such as working at unprotected heights, operating fast or dangerous machinery or driving commercial vehicles.

(*Id.*). The ALJ supported his RFC finding by explaining:

> The [Plaintiff's] records do not support finding that the [Plaintiff] requires greater work restrictions beyond those in the residual functional capacity herein. . . .The [Plaintiff's] examination and treatment providers have noticed inconsistencies in her claims. The [Plaintiff's longitudinal records establish that the [Plaintiff] is not as limited as alleged and is able to perform work within the residual functional capacity herein. The impression of the [Plaintiff's] right knee study was posterior medial meniscus tear. The [Plaintiff] appears to have only reported pain and limitations due to this impairment to her workers' compensation treatment and examination providers. The [Plaintiff's] knee surgery had to be postponed due to her diabetes which was not under control. She did not report pain or limitations due to this or other physical impairments to her primary treatment provider. The [Plaintiff's] gait and balance

15cv2196-AJB-MDD

were found to be normal while awaiting medical clearance for her surgery.

(A.R. 27).

The ALJ found that Plaintiff's allegations of disability are greater than expected in light of the medical evidence of record. For example, the ALJ cites to Plaintiff's medical history wherein she reported that "she seldom checks her blood sugar." (*Id*.). Plaintiff's treatment provider adjusted her insulin, and her appointment reports from September through November 2011, show at that time she was in no acute distress, her balance and gait were normal, she was oriented to time, place, person and situation and she behaved appropriately for age. (A.R. 341). Her diagnosis at that time was Diabetes Mellitus without mention of complication. (A.R. 353).

The ALJ noted that during Plaintiff's workers' compensation examinations in March and May of 2012, she reported "complaints that she has not asserted in these proceedings or reported to her primary treatment providers." (A.R. 28). Specifically, in March 2012, Plaintiff stated she had constant severe pain in the mid low back, radiating to the right buttocks and right lateral hip compounded by stabbing pain with burning in her low back. (A.R. 394). However, upon examination "motor function, sensation, reflexes and gait were unremarkable." (A.R. 28, 399). In May of 2012, the physician reported that Plaintiff (through an interpreter) stated she was a nondiabetic. (A.R. 28, 415). The workers' compensation physician reported his impressions of Plaintiff's exam as "normal," with the perineal nerves on each side having a

8

somewhat low amplitude and the "rest of the exam was perfectly normal." (A.R. 417).

In December 2012, Plaintiff underwent a further workers' compensation consultation. At that time Plaintiff's main complaint were neck pain radiating down her left arm and low back pain radiating to her left hip. (A.R. 29). Contrary to her complaints, the examining physician found that Plaintiff's cervical spine had normal and full range of motion but did have tenderness bilaterally over the suprascapular areas. (A.R. 434). It was further found that she likely did aggravate her back, cervicotrapezius and neck, which Plaintiff should treat with continuing physical therapy. (A.R. 439).

The ALJ found that Plaintiff's allegations are greater than expected in light of the medical evidence in the record. The ALJ found that Plaintiff has not been fully compliant with her diabetes treatment but that there appears to be no complications due to that impairment. (*Id.*). The ALJ cited to Plaintiff's testimony regarding her knee, gallbladder, and back. Plaintiff testified that all of these ailments cause her pain. (A.R. 46-47). Plaintiff further testified that removal of her gall bladder was recommended but it cannot be done because her diabetes "is very out of control." (AR. 45). Additionally, Plaintiff testified that her knee hurts a lot but she could not have the knee surgery due to her uncontrolled diabetes. (A.R. 46-47). She further testified that her back pain prevents her from working but cannot be treated with injections because of her uncontrolled diabetes. (*Id.*). Specifically, the ALJ explained that "[t]he Plaintiff's examination

findings do not support many of the claims asserted or establish additional impairments to be medically determinable under the rules and regulations binding on this decision." (A.R. 26). The ALJ found the objective medical evidence inconsistent with Plaintiff's allegations of severely disabling pain preventing her from working. The ALJ found Plaintiff's statements are not entirely credible regarding the intensity, persistence and limiting effects of her symptoms due to her work history and inconsistencies between her testimony and the objective medical record. (A.R. 27).

Considering the record evidence and Plaintiff's testimony elicited by the VE, the ALJ found that Plaintiff is capable of performing past relevant work as an artificial flower maker at step four in the sequential evaluation. (A.R. 30). The ALJ further stated, however, "[a]lthough the [Plaintiff] is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, I make the following alternative findings for step five of the sequential evaluation process." (A.R. 31). Specifically, the ALJ determined that based on Plaintiff's RFC, age, education, and work experience there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. (*Id.*). The ALJ noted that Plaintiff's RFC takes into consideration her inability to perform all or substantially all of the requirements of [a medium] level of work due to additional limitations. The ALJ sought assistance from the VE regarding the extent that Plaintiff's additional limitations erode jobs in the "unskilled medium occupational base." (*Id.*). The VE

testified that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff "would be able to perform the requirements of representative occupations such as linen room attendant, DOT 222.387-030, medium, 81,000 jobs in the national economy, 5,000 jobs in the region defined as San Diego, San Marcos and Carlsbad; and laundry worker I, DOT 361.684-014, 50,000 jobs in the national economy and 1,400 jobs in the region." (*Id.*).  Ultimately, the ALJ concluded, "[b]ased on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of not 'disabled' is therefore appropriate under the framework of the above-cited rules."

In determining that Plaintiff is not disabled, the ALJ specifically noted the following to be of particular relevance:

### 1.  Plaintiff's Mental Impairments

The ALJ found Plaintiff's mental impairment of depressed and anxious mood nonsevere.  (A.R. 24).  The ALJ noted that "her medically determinable mental impairment . . . does not cause more than minimal limitation in [her] ability to perform basic mental work activities. . . ." (*Id.*).  The ALJ also found that the evidence does not establish more than mild limitations in the first three "paragraph B" criteria and Plaintiff has not suffered any episodes of decompensation that have been of extended duration. (A.R. 25).

15cv2196-AJB-MDD

2.  Dr. Neil Halbridge, M.D.

In March of 2012, the Plaintiff had an orthopedic evaluation by Dr. Neil J. Halbridge, M.D., as "part of her workers' compensation claim." (A.R. 394).  The exam covered multiple body parts "including the lumbar spine, right knee, right lower extremity, right hip and psyche complaints. . . ." (*Id.*).  With respect to her lower back complaints Dr. Halbridge found that subjective factors include right hip and right lower extremity with constant slight to moderate pain increased with bending and lifting and partially temporarily relieved with Tramadol." (A.R. 401).  Dr. Halbridge noted that the objective factors regarding Plaintiff's lumbar spine "include asymmetrical limitation of motion in the frontal plane." (A.R. 402).  Regarding Plaintiff's right knee complaints, Dr. Halbridge noted that subjective factors include constant slight to moderate medial joint line pain and anterior knee pain increased with squatting, kneeling and prolonged walking.  Partial temporary relief experienced with Tramadol.  (A.R. 401).  The objective factors of disability regarding the right knee include "positive patellofemoral compression and positive patellofemoral crepitation consistent with a posterior horn medical meniscal tear with the tear extending through the superior and inferior articular surface of the meniscus with a parameniscal cyst present.  There was also mild tricompartmental osteoarthritis with chondromalacia right knee." (A.R. at 402).

15cv2196-AJB-MDD

3.  Dr. Robert S. Warren, M.D.

In May 2012, Plaintiff underwent nerve conduction/EMG testing by Dr. Warren, M.D., a board certified Neurologist.  (A.R. 415). According to Dr. Warren, Plaintiff reported that "she's a nondiabetic with low back pain and radicular leg pain."  (*Id*.).  Dr. Warren's impressions were that Plaintiff's exam was "perfectly normal."  (A.R. 417).  "The perineal nerves on each side have a somewhat low amplitude, this was a non-specific, nonlocalizing finding."  (*Id*.).

4.  Dr. Mike Khoury, M.D.

Also in May 2012, the Plaintiff underwent a series of MRIs.  The first was of the pelvis for low back pain.  (A.R. 421).  No fracture or dislocation was identified. No visible soft tissue swelling was noted. (*Id*.).  The second MRI was of the lumbosacral spine complete-flexion/extension views with bending.  Bones were normal with no significant spondylosis, scoliosis, fracture or visible bony lesion.  Disc spaces were normal, with no significant disc height narrowing, subluxation, or endplate abnormality.  No paraspinous abnormality was seen.  Dr. Khoury concluded there was no evidence of acute disease. (A.R. 422).  The third MRI was of the lumbar spine.  (A.R. at 423). Findings showed normal paraspinal area with no visible mass.  No bone fractures, defects, or osseous lesion.  (*Id*.).  The cord/cauda equine was normal caliber, contour and signal intensity.  Dr. Khoury concluded there was disc bulge and vertebral ridging at L5-S1 level with right paracentral annular tear.

5.  Dr. William Previte, D.O.

In December 2012, Plaintiff had an orthopedic consult with Dr. Previte, D.O., as part of her workers compensation claim.  (A.R. 29, 428).  Based upon her slip and fall on February 20, 2011,  Dr. Previte diagnosed Plaintiff with low back sprain and strain with discogenic syndrome and right lower extremity rediculitis, right knee sprain/strain with probable internal derangement, preexisting.  Based upon her slip and fall on October 23, 2012, Dr. Previte diagnosed Plaintiff with left arm sprain and strain, cervicotrapezius strain, exacerbation of low back with new onset left lower extremity radiculitis.  (A.R. 438).  Dr. Previte did note that Plaintiff has normal and full cervical spine range of motion in all planes and passively there is normal shoulder motion.  (A.R. 434).  Dr. Previte noted in his report that he did not have Plaintiff's medical records to review.  (A.R. 433).

6.  Dr. Gary DeVoss, Ph.D

Dr. DeVoss, a licensed psychologist examined Plaintiff on February 26, 2013.  (A.R. 532).  This was Dr. DeVoss' second examination of Plaintiff, the first examination having occurred on March 6, 2012.  (*Id.*).  Dr. DeVoss was able to review her medical records back to March 2011.  (A.R. 535-544).  Dr. DeVoss noted that Plaintiff's mental status is almost identical to her mental status in March of 2012.  (A.R. 546).  Dr. DeVoss stated "her credibility is more of an issue on this date due to the fact that Plaintiff's psychological complaints and distress are no different than one year ago, but on this date she blames her emotional problems on her left shoulder, arm and

14

hand rather than on her back, hip and right leg." (*Id.*).  Dr. DeVoss

opined that Plaintiff does not appear to be malingering but she does not

meet the criteria for a specific mood disorder.  (A.R. 548). Plaintiff does

seem to be suffering from "Pain Disorder" since the main criterion is

pain as the focus of the presenting problems.  (*Id.*).  Dr. DeVoss

assigned Plaintiff a GAF of 67.[2]  (*Id.*).

    7.  State Agency Physicians

    Dr. F. Kalmar, M.D., found Plaintiff had the medically

determinable impairments of Osteoarthritis and Allied Disorder and

Diabetes Mellitus, all severe.  (A.R. 80).  Dr. Kalmar stated in a

Personalized Decision Notice "although you have discomfort you remain

able to move about and can use your hands and arms and legs in a

satisfactory manner to do activities that do not require heavy exertion."

(A.R.84).

    Dr. M. Gleason, M.D., the other State Agency physician found

that, despite decreased range of motion and right knee tenderness,

Plaintiff had a normal gait with strength and sensation intact.  (A.R.

92).  According to Dr. Gleason, there appeared to be no worsening of the

objective findings, thus leaving her medium RFC unchanged.  (*Id.*).

    Both State Agency physicians opined that Plaintiff could perform

her past relevant work of factory worker, specifically including the titles

of Assembly Line Laborer, Production Line and Flower Arranger.  (A.R.

93).

---

[2] GAF stands for Global Assessment Functioning. On a scale of 0-100
with higher scores indicating a greater level of functioning.

15cv2196-AJB-MDD

8.  Vocational Expert (VE)

The ALJ also consulted with and took testimony from Harland Stock, a Vocational Expert (VE).[3]  In this case, the VE listened to Plaintiff's testimony, examined Plaintiff at the hearing and reviewed Plaintiff's medical records.  In response to the ALJ's hypotheticals, the VE testified that based upon Plaintiff's residual functional capacity she was capable of performing work as an artificial flower maker as she actually performed it and as per the DOT (Dictionay of Occcupational Titles).  (A.R. 31).  The VE also testified that other work exists in the national and regional economy at the medium exertion level and in the unskilled category.  (A.R. 68).  The first job identified by the VE was linen room attendant DOT 222.387-030 and the second job was laundry worker I, DOT 361-684-014.  (A.R. 68-69).  After inquiry by the ALJ whether there were jobs in the national and regional economy at the light exertion level that Plaintiff could perform, the VE testified that Plaintiff could perform work as a blending tank helper DOT 520.684-066 and cleaner, housekeeper, DOT 323.687-014.  (A.R. 70).

---

[3] "The vocational expert is called to testify at a disability hearing. At the hearing, the ALJ uses a series of hypothetical questions to 'set out all of the claimant's impairments' for the vocational expert's consideration … The vocational expert is then called upon to 'translate factual scenarios into realistic job market probabilities' by testifying, on the record, to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.'" *Desrosiers*, 846 F.2d at 578.

C.     Issues on Appeal

    1.  Past Relevant Work

Plaintiff argues that the ALJ erred at step four because her prior work was not performed at the substantial gainful activity level (SGA), one of the requirements used to define whether her previous work qualifies as past relevant work (PRW) that she is capable of performing.

Defendant argues Plaintiff has misinterpreted the law regarding SGA and that a review of the applicable regulations and case law demonstrate that the ALJ did not err when she found Plaintiff capable of performing her past relevant work at step four of the sequential evaluation.  Defendant further argues that even had the ALJ erred at step four, the ALJ continued her analysis through step five and found Plaintiff not disabled because she could perform a significant number of jobs in the national economy.  (ECF 16 at 5).

"At step four [of the sequential evaluation] the claimant bears the burden of showing that he or she does not have the residual functional capacity to engage in 'past relevant work.'"  *Lewis v. Apfel,* 236 F.3d 503, 515 (9th Cir. 2001).  "If a claimant can perform his or her past relevant work, then he or she is not disabled.  If not, or if he or she did not do past relevant work, then the ALJ moves to step five, in which he or she determines if the claimant has the residual functional capacity to do other substantial gainful work."  *Id.*

Defining prior work activity as "past relevant work" for purposes of the step four analysis, the Commissioner must find that that prior work activity "was substantial gainful activity."  20 C.F.R. §§

15cv2196-AJB-MDD

404.1560(b)(1), 416.960(b)(1).  "A job qualifies as past relevant work only if it involves substantial gainful activity." *Lewis*, 236 F.3d at 515.

"Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities. . . . Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Id.*  "The presumption that arises from low earnings shifts the step-four burden of proof from the claimant to the Commissioner." *Id.*  "With the presumption, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity." *Id.*

Here the ALJ found Plaintiff was capable of performing her PRW as an artificial flower maker.  (A.R. 30).  A job qualifies as PRW only if it involved substantial gainful activity.  *Lewis*, 236 F.3d at 515.  In this case, for the years 2006-2012 Plaintiff's earnings were sporadic.  For example, in 2006, Plaintiff made $14,984.69, which is above the SGA amount.[4]  However, in 2007 Plaintiff made substantially less, falling below the SGA monthly threshold amount for that year.  Plaintiff testified that in 2008 she worked full time at the same location (Contractor Yard) for twenty-four months, however, the earnings information presented in the record shows she worked there only for 2008.  (A.R. 183).  Plaintiff later testified that she did not work full time

---

[4] It should be noted that while Plaintiff's 2006 earnings exceeded the monthly SGA, she was employed during that year at three different companies.

15cv2196-AJB-MDD

from 2009 through 2012 and her earnings reflected she earned less than the monthly SGA for those years. (A.R. 55). Therefore, her monthly average earnings did not rise to the level at which the Defendant "[would] consider that [her] earnings from [her] work activities as an employee show that [she] engaged in substantial gainful activity." 20 C.F.R. §§ 404.1574(b)(2), 416.972(b)(2).

Nevertheless, the inquiry of whether work constituted SGA does not end with earnings, "substantial work activity" is defined in the regulations as work that "involves doing significant physical or mental activities" and "is the kind of work usually done for pay or profit." 20 C.F. R. § 416.972(a),(b). "'[W]ork may still be substantial even if it is done on a part-time basis….'" *Byinton v. Chater*, 76 F.3d 246, 250 (9th Cir. 1996) (internal citations omitted). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b). Thus, the ALJ considered other information in addition to Plaintiff's earnings. *See* 20 C.F.R. § 404.1574(b).

Here, the ALJ elicited testimony from Plaintiff regarding her prior work. Specifically, Plaintiff testified that she did not work full time from 2009-2012 and that her hours varied. (A.R. 52). Plaintiff testified that in 2008 she worked putting together artificial flowers, in an assembly line situation. (A.R. 53). Plaintiff also testified that she worked in 2006 in an assembly helper capacity and she would also fasten parts together with screws using a screw driver and power drill. (A.R. 60). Later in the hearing, the ALJ elicited additional testimony

19

1   from Plaintiff regarding her most recent position creating flowers.

2   Plaintiff testified she stood in one spot and did not have to lift more

3   than 10 pounds.  (A.R. 67).[5]

4        While Plaintiff may not have had earnings at the SGA level after

5   2006, there is substantial evidence that her past work activities

6   constituted substantial gainful activity for purposes of the step-four

7   analysis.  A review of the record shows that the ALJ did not err in

8   finding Plaintiff had past relevant work based upon her earnings

9   records and her testimony.

10       Plaintiff's related argument that the ALJ erred by failing to

11  properly evaluate the demands of Plaintiff's past relevant work and her

12  ability to perform that work is unpersuasive.  At step four, the ALJ

13  must determine the demands of Plaintiff's previous work against her

14  current ability.  20 C.F.R. § 404.1520(e).  The ALJ satisfied this

15  requirement here.  For example, as previously noted, the ALJ cited to

16  Dr. Halbridge, who examined Plaintiff in March 2012.  Those records

17  showed examination of her knees and hips unremarkable.  Her motor

18  function, sensation, reflexes and gait were also unremarkable.  (A.R.

19  28).  The ALJ cited to the records of Dr. Warren who found Plaintiff's

20  whole body scan was negative for any abnormalities in the lumbar spine

21  or pelvis.  (A.R. 28).  In addition, the ALJ noted Dr. Warren documented

22  _____

23  [5] The Court notes that Plaintiff was somewhat inconsistent in her
    recollection of where she worked and the duration of her work in

24  specific years. For example, Plaintiff testified that she worked for 24
    months at Contractor Yard, but her earnings record show she worked

25  there only in 2008.  (AR at 183).

15cv2196-AJB-MDD

disc bulge and vertebral bridging with no significant spinal stenosis.
(A.R. 28).  The ALJ also noted the opinion of Dr. Previte, who examined
Plaintiff in December 2012.  Dr. Previte found some abnormality but
Plaintiff's range of motion of the elbows was normal, inspection of her
back was normal, her hips had normal strength and almost full range of
motion.  (A.R. 29).  Additionally, the ALJ considered the opinions of the
two State Agency doctors, both of whom found Plaintiff could perform
her past relevant work despite some limitation in the performance of
certain work activities.  (A.R. 83, 93).   The ALJ also indicated he
"considered additional evidence, including more recent records, the
claimant's testimony and the effects of her right knee impairment."
(A.R. 30).

The ALJ fully considered Plaintiff's functional capacity against
the above cited record medical evidence and the testimony in the case.
(A.R. 25-31).  The ALJ stated "the credible evidence continues to
establish the claimant is able to perform medium work consistent with
the residual functional capacity herein."  (A.R. 30).  The ALJ
determined that Plaintiff had the residual functional capacity to
perform medium work except she can lift/carry 25 pounds frequently, 50
pounds occasionally; she can push and pull within these weight limits
on an occasional basis with the lower and upper extremities; standing
and walking 6 hours out of 8 with no prolonged walking greater than
two hours; sitting 6 hours out of 8 with the ability to stand and stretch
not to exceed 10% of the day: no ladders, ropes or scaffolds; and no work

around hazards such as working at unprotected heights, operating fast or dangerous machinery or driving commercial vehicles.  (A.R. 25).

The medical evidence cited by the ALJ does not support Plaintiff's claim that she was incapable of performing her past relevant work.  The record medical evidence shows Plaintiff's subjective complaints are not substantiated to the degree Plaintiff alleges.  The ALJ articulated sufficient reasons for rejecting her subjective disability allegations.  In sum, the ALJ properly concluded that Plaintiff retained the functional capacity to perform her past work as a flower assembler.

2.  The ALJ's Determination at Step Five

Notwithstanding the ALJ's determination that Plaintiff could perform her past relevant work, the ALJ also moved to step five of the disability evaluation process to show that there were a significant number of jobs in the national economy Plaintiff is able to do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e), (g).

Plaintiff contends that the ALJ erred in failing to properly apply the medical/vocational guidelines at step-five of the sequential evaluation.  Specifically, Plaintiff argues that "an individual who does not have past work, who is … limited to medium exertion work, who is unable to communicate in English or illiterate, and who is over the age of 55, is disabled … as mandated at 20 C.F.R., Part 404, Subpt. P, Appendix 2 Medical-Vocational Rule § 203.10."  (ECF 14 at 8).  Plaintiff further contends that the application of the medical-vocational guidelines is mandatory for persons suffering exclusively from

22

15cv2196-AJB-MDD

exertional limitations.  *Id.* (citing *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-1116 (9th Cir. 2006)).  Thus, Plaintiff asserts that she became disabled when she turned age 55.  *Id.*

Defendant argues that "[s]ubstantial evidence supports the ALJ's step five finding because the VE identified a significant number of jobs that Plaintiff could perform."  (ECF 16 at 5).   Defendant did not address Plaintiff's allegation that her non-English speaking status, among other relevant factors, would categorize her as disabled pursuant to the medical-vocational guidelines.

"Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability."  *Tackett*, 180 F.3d at 1100.  If the claimant successfully makes a prima facie showing of disability at step five of the sequential evaluation process "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.* (quoting 20 C.F.R.  § 404.1560(b)(3)).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a

vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  *See* 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *Tackett*, 180 F.3d at 1099.

### a. Vocational Expert

"The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d. 1153, 1161 (9th Cir. 2012) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *Desrosiers, supra*, 846 F.2d at 578).  "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Desrosiers*, 846 F.2d at 578 (citing *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279-80 (9th Cir. 1987)).  "The vocational expert is then called upon to 'translate[] factual scenarios into realistic job market probabilities' by testifying, on the record, to what kinds of jobs, the claimant can still perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.'" *Desrosiers*, 846 F.2d at 578 (quoting *Gamer*, 815 F.2d at 1280).

15cv2196-AJB-MDD

### b. Medical-Vocational Guidelines (the grids)

Alternatively, the ALJ may satisfy the step five burden of showing that a claimant can perform work by relying on the Medical-Vocational Guidelines, commonly referred to as "the grids." *See* C.F.R. Pt. 404, Subpt. P, App. 2; *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citing *Tackett*, 180 F.3d at 1101). The grids "present in table form, a short-hand method for determining the availability and numbers of suitable jobs for claimant." *Lounsberry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). The grids categorize jobs based on exertional or physical strength requirements.[6] Each table sets forth combinations of age, education, and work experience, and for each combination directs a finding of either "disabled" or "not disabled" based upon the number of jobs in the national economy for someone with listed characteristics. *Id.* at 1115; *see also Lockwood*, 616 F.3d at 1071 ("The grids are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."" (quoting *Heckler*, 461 U.S. at 461-62). Reliance on the grids "allows the Commissioner to

---

[6] "The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: '[m]aximum sustained work capacity limited to sedentary work,' '[m]aximum sustained work capacity limited to light work,' and '[m]aximum sustained work capacity limited to medium work.'" *Tackett*, 180 F.3d at 1101 (quoting 20 C.F. R. Pt. 404, Subpt. P, App. 2, Rule 200.00).

25

streamline the administrative process and encourages uniform treatment of claims." *Tackett*, 180 F.3d at 1101 (citing *Heckler*, 461 U.S. at 460-62).

When a claimant suffers only exertional limitations, the ALJ must use the grids. *Lounsberry*, 468 F.3d at 1115; 20 C.F.R. § 404.1569a(b). If a claimant alleges only non-exertional limitations[7] "the grids are inappropriate, and the ALJ must rely on other evidence." *Id.* If a claimant has both exertional and non-exertional limitations, the grids may be used as a framework for decision making. 20 C.F.R. § 404.1569a(d).

Here, the ALJ determined that Plaintiff suffers from exertional impairments only. (A.R. at 24). In moving from the step four evaluation to step five the ALJ found that during the time her case was before the ALJ she moved from the age category defined as an individual closely approaching advanced age into the advanced age category. (A.R. at 31, citing 20 C.F.R.§ 404.1563). The ALJ further determined:

> The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 C.F.R. 404.1564). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not the claimant

---

[7] Non-exertional limitations are "limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)

has transferable job skills. (*Id*. citing 20 C.F.R. Part 404, Subpart P, Appendix 2).

In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform. (*Id*. citing 20 C.F.R.  404.1569 and 404.1569(a)).

The ALJ concluded that if Plaintiff was able to perform the full range of medium work, Medical-Vocational Rule 203.19 and Rule 203.12 apply and a finding of "not disabled" would be appropriate.  (*Id*.). Realizing, however, that Plaintiff's ability to perform medium work had been impeded by additional limitations, the ALJ elicited testimony from the VE, in the form of two hypotheticals.  (*Id*.).  The ALJ asked the VE whether, in addition to Plaintiff's past work, other jobs would exist in the national economy that Plaintiff could perform.  The VE noted that a person with the RFC as presented in both hypotheticals could be a linen room attendant, DOT 222.387-030.[8]   The VE also testified that the position of laundry worker I, DOT 361.684-014, would be consistent the hypothetical RFC.[9]   The ALJ then moved to the range of light work using the same hypothetical as presented for a person performing medium work.  (A.R. at 69).  The VE testified that a person capable of performing a range of light work using the same hypotheticals could

---

[8] This job has approximately 81,000 jobs in the national economy, approximately 5,000 jobs in the regional economy.

[9] This job has approximately 50,000 jobs in the national economy, approximately 1,400 jobs in the regional economy.

15cv2196-AJB-MDD

manage the job of blending tank helper, DOT 520.684-066[10] and the job of cleaner, housekeeping, DOT 323.687-014.[11]

    Disregarding, the hypotheticals and testimony of the VE, Plaintiff argues that the ALJ failed to apply the correct grid rule.  Plaintiff cites to Pt. 404, Subpt. P, App. 203.00(c), which states:

> [T]he absence of any relevant work experience becomes more significant adversity for persons of advanced age (55 and over).  Accordingly, this factor, in combination with a limited education or less, militates against making a vocational adjustment to even this substantial range of work and a finding of disabled is appropriate.

    Specifically, Plaintiff argues that Medical-Vocational Rule 203.10 is the applicable rule in her case, rather than rule 203.12 applied by the ALJ.[12]

    Plaintiff's conviction that 203.10 applies is based on her claim that she has no prior work experience and is functionally illiterate in English.  Plaintiff's argument is misplaced.  First, this Court finds that the ALJ presented substantial evidence that Plaintiff did have past relevant work.  As noted herein, the ALJ referred to Plaintiff's earnings

---

[10] 70,000 jobs in the national economy and 4,200 in the regional economy.

[11] Approximately 98,000 jobs in the national economy and approximately 3,000 jobs in the regional economy.

[12] Rule 203.10 provides for a finding of disabled for a person of advanced age, limited or less education and no previous work experience.  Rule 203.12 provides for a finding of not disabled for a person of advanced age, limited or less education and skilled or semi-skilled (skills not transferable) previous work experience.

15cv2196-AJB-MDD

records and her own testimony which demonstrates a relevant work history dating back to 2006.

Second, the limitations related to illiteracy are already accounted for in the Grids.  For example, 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(i) and 202.00(g) state that illiteracy or inability to communicate in English may limit an individual's vocational scope, but is least significant in considering the ability to perform the work functions of unskilled work.  "While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions  at the unskilled level, literacy or ability to communicate in English has the least significance."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(i); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(g).

A plain reading of § 203.00, the medical-vocational guidelines for medium exertional work, makes it clear that Rule 203.00 is not augmented by the specific text contained in Rules 201.00(i) and 202.00(g) specifically addressing the issue of illiteracy or the inability to communicate in English.  As noted previously, the ALJ had made her own determination that "[t]he claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English." (A.R. at 31)  Thus, the ALJ recognized Plaintiff's non-English speaking status when she determined medical-vocational Rule 203.12 accurately represented Plaintiff's limitations.

15cv2196-AJB-MDD

1    Assuming for the sake of argument, that the ALJ should have

2    applied rule 203.11[13] which would have assessed Plaintiff's previous

3    work experience as unskilled, the jobs identified at step five by the VE

4    in response to the ALJ's hypotheticals are within the unskilled light or

5    medium occupational base.  (A.R. at 31).  "Approximately 2,500

6    separate sedentary, light and medium occupations can be identified,

7    each occupation representing numerous jobs in the national economy

8    which do not require skills or previous experience and which can be

9    performed after a short demonstration or within 30 days."  20 C.F.R. Pt.

10   404, Subpt. P, App. 2 § 203.00.   Thus, any error was harmless as it had

11   no effect at step five because the ALJ properly concluded that Plaintiff

12   could perform work currently available in the national and regional

13   economies as demonstrated by the jobs identified by the VE.

14       3.  Substantial Evidence Supports the ALJ's Decision

15       A review of the record presented demonstrates that substantial

16   evidence supports the ALJ's decision finding Plaintiff not disabled and

17   that she has the residual functional capacity to perform her past

18   relevant work as an artificial flower maker.  (A.R. at 31).  In this case,

19   the ALJ reviewed the record and found little objective evidence that

20   Plaintiff was suffering such great pain that she could not engage in any

21   type of substantial gainful work.  "That a job is found to be tedious or

22   uncomfortable cannot constitute substantial evidence that a person is

23

24   [13] Rule 203.11 provides for a finding of not disabled for a person of
25   advanced age, limited or less education and unskilled previous work
     experience.

15cv2196-AJB-MDD

1   disabled from doing any work." *Sorenson v. Weinberger*, 514 F.2d 1112,

2   1117 (9th Cir. 1975).  With the exception of Plaintiff's own allegations,

3   all opinion evidence in the record supports the ALJ's decision.

4        The ALJ clearly relied on the findings of the treatment record and

5   reports cited in the administrative record.  The ALJ's findings are

6   consistent with the record as a whole.  Title 20 C.F.R. § 416.920b states

7   "after the [ALJ] review[s] all of the evidence relevant to your claim,

8   including medical opinions [the ALJ] make[s] findings about what the

9   evidence shows." (*Id.*).  Further, Title 20 C.F.R. § 416.927(6)(d)(1) states

10  in part, "[the ALJ is] responsible for making the determination or

11  decision about whether [a claimant] meet[s] the statutory definition of

12  disability."  "The ALJ is the final arbiter with respect to resolving

13  ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d

14  1035, 1041-1042 (9th Cir. 2008).

15       The Court's review revealed no ambiguity or error indicating that

16  the ALJ's decision was based on less than substantial evidence.  42

17  U.S.C. § 405(g).  Accordingly, the Court finds the ALJ's findings of fact

18  and conclusions of law, including Plaintiff's residual functional capacity,

19  are supported by substantial evidence and free of legal error.  For these

20  reasons, it is recommended Plaintiff's motion for summary judgment on

21  her claim that the ALJ committed error for failing to fully credit her

22  allegations of disabling limitations be **DENIED** and the

23  Commissioner's motion for summary judgment be **GRANTED**.

24

25

15cv2196-AJB-MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## IV.   CONCLUSION

The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendant's Motion be **GRANTED**, and the case be **DISMISSED**.  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objection to this REPORT must be filed with the Court and served on all parties no later than **September 30, 2016**.  The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 7, 2016**.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:   September 13, 2016

Hon. Mitchell D. Dembin
United States Magistrate Judge

15cv2196-AJB-MDD